IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 5, 2022 Session

## STATE OF TENNESSEE v. QUINTON DEVON PERRY

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Madison County**
**No. 18-502    Donald H. Allen, Judge**

_____

**No. W2019-01553-SC-R11-CD**
_____

In this appeal, we address principles governing the imposition of consecutive sentencing for "an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2) (2019). Quinton Devon Perry pleaded guilty to twenty-four counts of aggravated sexual exploitation of a minor that took place during the years 2016 and 2017, stemming from the discovery that he had uploaded 174 images or videos comprising child pornography or child erotica to his electronic file sharing account. Although Mr. Perry had no prior criminal convictions, the trial court imposed partial consecutive sentencing after finding that he qualified as an offender whose record of criminal activity was extensive. A divided panel of the Court of Criminal Appeals affirmed. State v. Perry, No. W2019-01553-CCA-R3-CD, 2021 WL 2563039, at *7 (Tenn. Crim. App. June 22, 2021), perm. app. granted, (Tenn. Nov. 18, 2021). The dissenting judge, citing a lack of proof that Mr. Perry engaged in a continuous course of downloading and uploading materials over the alleged time period, concluded that the record did not establish him as an offender whose record of criminal activity was extensive. Id. at *6–7 (McMullen, J., dissenting).[1] Mr. Perry sought permission to appeal, arguing that the lower courts improperly found him to be an offender whose record of criminal activity was extensive based solely on the number of offenses to which he pleaded guilty. We accepted Mr. Perry's appeal. In this opinion, we clarify certain principles for imposing consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(2) and set forth a non-exclusive list of considerations to aid determining whether a defendant qualifies as an offender whose record of criminal activity is extensive. Based on our review, we have determined that the trial court adequately articulated the reasons for ordering consecutive sentencing on the record. Affording the trial court's decision a presumption of reasonableness, we conclude that the trial court did not err in imposing partial consecutive sentencing. Accordingly, we affirm the decision of the Court of Criminal Appeals.

---

[1] Judge McMullen authored the majority opinion. In that opinion, however, Judge McMullen disagreed with the majority as to the trial court's decision to impose partial consecutive sentencing. For purposes of our opinion, we have characterized Judge McMullen's view of the issue as a dissent.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgment of the Court of Criminal Appeals Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and SHARON G. LEE, HOLLY KIRBY, and SARAH K. CAMPBELL, JJ., joined.

Kendall Stivers Jones (on appeal), Franklin, Tennessee; and George Morton Googe, District Public Defender, Greg Gookin, Assistant Public Defender (at trial), for the appellant, Quinton Devon Perry.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Brent C. Cherry, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Matthew Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2017, the National Center for Missing and Exploited Children notified the Jackson Police Department of a tip it had received from the electronic file sharing service Dropbox, Inc. The tip indicated that a Dropbox user had uploaded to his Dropbox account 174 electronic files believed to be child pornography or child erotica. The Jackson Police Department investigated and confirmed that the uploaded files consisted of still images and videos depicting minors engaged in sexual activity or posed in a sexual manner. Further police investigation led authorities to Quinton Devon Perry ("the Defendant"). In February 2018, police investigators interviewed the Defendant.[2] The Defendant initially denied responsibility but ultimately admitted that he had downloaded the images and videos and uploaded the files to his Dropbox account using his mobile phone. The Defendant also admitted that he had shared or traded electronic files with others.

The Defendant was indicted in July 2018 on twenty-four counts of aggravated sexual exploitation of a minor. The first six counts alleged that the Defendant

> did knowingly promote, sell, distribute, transport, purchase, or exchange
> material, or possess with the intent to promote, sell, distribute, transport,
> purchase, or exchange material, which includes a minor engaged in sexual

---

[2] The Defendant's statement to police was the subject of a motion to suppress. The record demonstrates that the trial court denied the motion to suppress. However, the record does not contain the transcript of the suppression hearing, and as a result, it does not detail the evidence offered at the hearing.

activity or simulated sexual activity that is patently offensive and where the number of materials involved is greater than twenty-five (25).

See Tenn. Code Ann. § 39-17-1004(a)(2) (2018).[3] Because the first six counts specified that the number of materials involved was greater than twenty-five, they were classified as Class B felonies.[4] See Tenn. Code Ann. § 39-17-1004(a)(4). The remaining eighteen counts contained the same factual allegation except that they each corresponded to a single item of material, and as such, they were classified as Class C felonies. See id. By indicting the Defendant in this manner, the State maximized the number of Class B felony counts and remaining Class C felony counts, given that there were a total of 174 images or videos. Each count of the indictment alleged that the unlawful activity occurred "on or about 2016 through 2017."

In June 2019, the Defendant pleaded guilty to all twenty-four counts. At the guilty plea hearing, the State recounted the facts described above to establish the factual basis for the offenses. In addition, the State identified a particular Internet Protocol address ("IP address")[5] from which the Defendant had uploaded the 174 electronic files to his Dropbox account. In describing the Defendant's statement to police, the State recounted:

> [The Defendant] stated that he has a problem where he enjoys looking at young girls/children for sexual pleasure. He informed [t]he investigators that he downloaded images and videos of children committing sexual acts to another person and/or touching their naked bodies in a sexual manner. He informed investigators that he uploaded this child pornography to his Dropbox account and shared or traded the images and videos electronically with other people. He did advise that he downloaded and uploaded this pornography while he was residing at his grandparents' house here in Madison County . . . and it took place during the years 2016 and 2017.

The Defendant agreed that he had committed the offenses as described by the State.

The Defendant entered an open or blind guilty plea, meaning that he had no sentencing agreement with the State. The State filed a motion requesting that the trial court impose consecutive sentences, arguing that the Defendant was an offender whose record

---

[3] Because the pertinent statutory language has not changed since the commission of the Defendant's offenses, we cite to the current version of the code.

[4] Tennessee law specifies that "[w]here the number of materials involved in a violation . . . is greater than twenty-five (25), the person may be charged in a single count to enhance the class of offense [from a Class C felony to a Class B felony]." Tenn. Code Ann. § 39-17-1004(a)(2).

[5] An IP address is a unique string of characters that identifies a particular device using the Internet Protocol to communicate on the internet or a local computer network.

of criminal activity was extensive. See Tenn. Code Ann. § 40-35-115(b)(2) (2019). The trial court conducted a sentencing hearing in July 2019, at which the State introduced a presentence report that contained background information about the Defendant as well as details concerning the offenses.

The presentence report revealed that the Defendant was born in January 1997, making him nineteen to twenty years old at the time of the offenses. He had no prior criminal convictions. However, the Defendant reported that he used marijuana "occasionally" from age fifteen through twenty. Similarly, the Defendant admitted that he drank alcohol "on occasion" beginning at age seventeen. The Defendant graduated high school in May 2016 and lived in Jackson with his grandparents during 2016 and 2017 before moving to nearby Hardeman County. He began working at age thirteen and continued to work, in a variety of jobs, through his arrest. The Defendant was evaluated through the use of an assessment tool that gauged the general likelihood to re-offend, yielding the result of a low risk.

As for the circumstances surrounding the offenses, the report recounted the facts described above, but it provided some additional details. The report revealed that law enforcement authorities, through subpoenas, attempted to obtain information about the IP address used to complete the "uploads" to the Defendant's Dropbox account, "using a time frame five days prior and five days after the date and time of the reported uploads." In other words, the report's references to uploads—plural—suggested that the Defendant uploaded files to his Dropbox account on more than one occasion. Additionally, law enforcement authorities obtained information that "mobile devices . . . had been used to log into the Dropbox account" and "four additional IP addresses . . . had been used to log into the account." In other words, consistent with the factual basis from the guilty plea hearing, the report suggested that the Defendant had allowed others to access his Dropbox account. Lastly, the report indicated that the 174 images and videos did not involve a single minor and sex act, but instead involved multiple different minors and multiple sex acts.

For his part, the Defendant offered his own testimony and that of his mother. The Defendant emphasized that he had no prior criminal convictions. He also testified that he was amenable to receiving professional help for his behavior. His mother confirmed that he had never been in trouble previously and had been a good member of the family.

After the presentation of proof, the State acknowledged that the Defendant had no prior criminal convictions but argued that precedent indicated he could qualify as "an offender whose record of criminal activity is extensive," Tenn. Code Ann. § 40-35-115(b)(2), based on the convictions presently before the trial court. The State asked that two of the B felony counts be run consecutively, with the remaining counts running concurrently. To support its request, the State pointed, in general terms, to the number of offenses involved (twenty-four felonies), the particular facts making up the offenses, and the circumstances detailed in the presentence report.

In addressing the question of consecutive sentencing, the Defendant acknowledged that he would have to serve time in prison given the nature of his convictions[6] but requested that the trial court order the sentences for his multiple offenses to run concurrently. Recognizing the seriousness of the offenses, the Defendant admitted that "the images . . . are very graphic and . . . disturbing." Nevertheless, the Defendant pointed out that although he "viewed them" and "clearly shared them," he had not produced the images. Furthermore, he argued that he had accepted responsibility for the offenses and was "agreeable to receiving help." Noting his youth and the fact that he was a high school graduate, the Defendant contended that he had "a lot of potential still" and argued that he could "contribute to the community."

In setting the Defendant's sentence at the conclusion of the hearing, the trial court articulated on the record the substantive sources for its decision. More specifically, the trial court announced that it would consider the evidence that was presented at the guilty plea hearing and at the sentencing hearing, including the presentence report.[7] The trial court also announced that it was considering "the principles of sentencing" as well as "the arguments that have been made by counsel." In addition, the trial court made specific reference to statutory enhancement and mitigating factors.

The trial court articulated the facts and circumstances that it found to be generally relevant to the sentencing decision. More specifically, the trial court observed that the Defendant had pleaded guilty to twenty-four separate offenses. The trial court recognized that the time period of the offenses was "in 2016 and 2017." Additionally, the trial court stated that it was considering "the nature and characteristics of the criminal conduct involved." In that vein, the trial court noted that "it was a total of 174 images or files" that comprised the offenses, commenting that "it involved a large amount of child pornography," that the Defendant "downloaded numerous child pornographic videos," and that the Defendant had engaged in "an extensive amount of criminal activity." Relatedly, the trial court took specific note of the proof that the Defendant "stated to investigators that he has a problem because he enjoys looking at young girls . . . for sexual pleasure." Moreover, the trial court commented that "this isn't just a situation where [the Defendant] downloaded pornographic material/child pornography which he maintained and viewed for his own pleasure. Apparently he was sharing some of this or trading some of these images and videos with other individuals." As a result, the trial court stated that it considered this

---

[6] The parties agreed at the guilty plea hearing that there was no release eligibility for the Defendant's Class B felony convictions. See Tenn. Code Ann. § 40-35-501(i) (requiring 100% service, less sentence credits amounting to no more than 15%, of a sentence for the offense of aggravated sexual exploitation of a minor involving more than twenty-five images).

[7] The trial court obviously was aware of the proof adduced at the suppression hearing, but the trial court's findings at the sentencing hearing did not refer specifically to such evidence.

"a serious offense especially in light of the large amount, the quantity of pornographic material which he was found to be in possession of."

The trial court acknowledged the Defendant's lack of prior criminal convictions but did note the Defendant's prior "criminal behavior" in the form of marijuana usage and underage alcohol consumption. In addition, the trial court acknowledged that the Defendant had pleaded guilty and accepted responsibility for his criminal behavior. Relatedly, the trial court announced that it considered the Defendant's potential for treatment and rehabilitation. The trial court also recognized the Defendant's youth, both in its general considerations and later in specific findings with respect to statutory mitigating factors.

Having identified these general considerations, the trial court addressed statutory enhancement and mitigating factors. The trial court found that the evidence supported two enhancement factors: (1) that the Defendant had a previous history of criminal behavior in addition to that necessary to establish the appropriate sentencing range, and (2) that the Defendant was a leader in the commission of an offense involving two or more criminal actors. See Tenn. Code Ann. § 40-35-114(1), (2) (2019). As to the latter, the trial court reiterated the significance of sharing the pornographic materials with other individuals, stating that the Defendant was "committing another act of advancing child pornography" by "turn[ing] around and shar[ing] it with other people." With respect to mitigating factors, the trial court found that the Defendant's conduct neither caused nor threatened serious bodily injury, referenced the Defendant's youth, and noted that the Defendant had accepted responsibility for his crimes. See Tenn. Code Ann. § 40-35-113(1), (6), (13) (2019).

The applicable sentencing range for the Defendant's Class B felonies was eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2). The applicable sentencing range for the Defendant's Class C felonies was three to six years. See Tenn. Code Ann. § 40-35-112(a)(3). The trial court sentenced the Defendant to nine years of imprisonment for each of the six Class B felonies (counts one through six) and to four years for each of the eighteen Class C felonies (counts seven through twenty-four). In addition, among other conditions, the trial court recommended that the Defendant be considered for a sex offender rehabilitative treatment program while in custody.

Having determined the sentence on each count, the trial court turned to the question of consecutive sentencing. The trial court expressly reiterated its consideration of the presentence report. The trial court also reiterated its consideration of the facts and circumstances surrounding the offenses, making particular mention of the Defendant's admitted "serious child pornography problem" and the large number of images involved, giving great weight to that circumstance. Lastly, the trial court reiterated its consideration of "the fact that [the Defendant] not only possessed these [files], but apparently he shared and traded a lot of these child pornography videos and pictures with other individuals." Relying on the "number of convictions and the number of offenses he's committed and the

number of offenses he's pled guilty to," the trial court found that the Defendant was as an "offender whose record of criminal activity is extensive." See Tenn. Code Ann. § 40-35-115(b)(2). The trial court then ordered counts one through three to be served concurrently as a group, but consecutively to counts four through twenty-four, for an effective total sentence of eighteen years of imprisonment. The trial court specifically found "that the aggregate length of this [eighteen-]year sentence reasonably relates to the number of offenses for which the defendant stands convicted."

On direct appeal, the Defendant challenged both the length of the individual sentences for his offenses and the trial court's decision to impose consecutive sentencing. As to the length of the individual sentences, the Court of Criminal Appeals noted that "the record shows the trial court carefully considered the evidence, the statutory enhancement and mitigating factors, and the purposes and principles of sentencing when imposing sentence" and concluded that "the trial court did not wholly depart from the sentencing act." State v. Perry, No. W2019-01553-CCA-R3-CD, 2021 WL 2563039, at *7 (Tenn. Crim. App. June 22, 2021), perm. app. granted, (Tenn. Nov. 18, 2021). Accordingly, the Court of Criminal Appeals unanimously affirmed the length of the individual sentences. Id.

With respect to the imposition of consecutive sentencing, however, the intermediate appellate court was divided. The majority "[did] not believe the trial court abused its discretion in determining that the Defendant had a record of extensive criminal history" and affirmed the imposition of consecutive sentencing. Id. Judge Camille R. McMullen dissented. In Judge McMullen's view, "[t]he record shows the trial court justified consecutive sentencing based solely upon the number of convictions to which the Defendant pleaded guilty without consideration of the pervasiveness of the Defendant's illegal behavior." Id. at 6 (McMullen, J., dissenting). Judge McMullen further stated:

> There is no question that the Defendant knowingly transferred or exchanged 174 images of child pornography as charged in the multiple count indictment. While this conduct was repulsive and repugnant, there was no proof in the record that the Defendant engaged in a continuous course of downloading or uploading the materials for the year long period alleged in each of the twenty-four counts of the indictment. In other words, the Defendant could have engaged in a single electronic transfer to facilitate the download/upload of all 174 images of child pornography.

Id. Accordingly, Judge McMullen concluded that the record did not establish that the Defendant had an extensive record of criminal activity. Id. at 7.

The Defendant appealed to this Court solely with regard to the issue of consecutive sentencing. The Defendant contends that the trial court erred by finding an extensive record of criminal activity based solely on the number of convictions. Likewise, the

Defendant contends that the Court of Criminal Appeals erred when it "impliedly found that the number of convictions, by itself, can support a finding of extensive criminal history." From our review of the record, we have determined that the trial court did not base its finding that the Defendant was an offender whose record of criminal activity was extensive solely on the number of convictions. Furthermore, we conclude that although the trial court's treatment of the relevant considerations could have exhibited more depth, the record reflects that the trial court sufficiently articulated its reasons for ordering consecutive sentences in accordance with the purposes and principles of sentencing such that the abuse of discretion standard, with a presumption of reasonableness, applies on appeal. See State v. Pollard, 432 S.W.3d 851, 861–62 (Tenn. 2013). Applying that standard, we conclude that the trial court did not err in imposing partial consecutive sentencing. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

## II. ANALYSIS

Tennessee law provides that "[i]f the defendant pleads guilty or is convicted in one trial of more than one offense, the trial judge shall determine whether the sentences will be served concurrently or consecutively." Tenn. R. Crim. P. 32(c)(1); see also Tenn. Code Ann. § 40-35-115(a). Tennessee law further provides that consecutive sentencing, apart from certain instances in which it is mandatory, may be imposed by the trial court only under specified circumstances. Those circumstances principally include when:

(1)  The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2)  The defendant is an offender whose record of criminal activity is extensive;

(3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)  The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).[8]  To impose consecutive sentencing under Tennessee Code Annotated section 40-35-115, the trial court must find that the proof establishes at least one of the seven listed classifications by a preponderance of the evidence.  Id.  Even when the proof establishes one of the classifications, the trial court is afforded discretion in deciding whether and to what degree to impose consecutive sentencing.  See id. (stating that the trial court, upon finding that the defendant is eligible for consecutive sentencing, "may order sentences to run consecutively"); see also State v. Dorantes, 331 S.W.3d 370, 392 (Tenn. 2011) (recognizing that whether sentences are to be served concurrently or consecutively is primarily within the discretion of the trial court); In re Sneed, 302 S.W.3d 825, 829 (Tenn. 2010) (recognizing that the decision to impose consecutive sentencing is a "matter entrusted to the sound discretion of the sentencing court").

Some of the classifications set forth in section 40-35-115 are relatively straightforward to determine.  See, e.g., Tenn. Code Ann. § 40-35-115(b)(6) ("The defendant is sentenced for an offense committed while on probation."), 40-35-115(b)(7) ("The defendant is sentenced for criminal contempt.").  Others, however, are less so.  See, e.g., Pollard, 432 S.W.3d at 863 (recognizing the more "subjective" nature of the dangerous offender classification under Tennessee Code Annotated section 40-35-115(b)(4)).  In this appeal, we address one of the latter classifications, section 40-35-115(b)(2), and we take this opportunity to set forth relevant considerations for determining whether a defendant qualifies for consecutive sentencing as "an offender whose record of criminal activity is extensive."

*A. Standard of Review*

In recent years, this Court has examined criminal sentencing procedure in the wake of landmark decisions from the United States Supreme Court and corresponding legislative changes enacted by the Tennessee General Assembly.  See generally State v. Bise, 380 S.W.3d 682, 693–99 (Tenn. 2012); Pollard, 432 S.W.3d at 856–62.  We will not repeat in this opinion the comprehensive examinations in Bise and Pollard of the developments in caselaw and legislation.  For purposes of this appeal, suffice it to say that one result of our prior examinations has been the clarification of the standard of review for sentencing decisions under the Tennessee Criminal Sentencing Reform Act of 1989, as amended ("the Sentencing Act").  In Bise, we addressed the principles governing appellate review of the trial court's decision setting the length of sentence for an individual conviction.  Bise, 380 S.W.3d at 684.  We adopted "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper

---

[8] Tennessee Code Annotated section 40-35-115(b) was amended in 2021.  Act of May 4, 2021, ch. 500, § 15, 2021 Tenn. Pub. Acts 1570, 1572 (codified at Tenn. Code Ann. § 40-35-115(b) (Supp. 2021) (adding subsection -115(b)(8))).  We refer to the version in effect at the time of the Defendant's sentencing.

application of the purposes and principles of our Sentencing Act." Id. at 707. We followed suit in Pollard with respect to the principles governing appellate review of the trial court's decision to impose consecutive sentencing. Pollard, 432 S.W.3d at 853. Analogous to our holding in Bise, we announced that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." Id. at 860. In each instance, we recognized that "the trial court must be afforded broad discretion in its sentencing decisions." Id. at 861. As we stated in Bise, "trial courts, 'familiar with their locale and having seen the evidence and the defendant, as well as possessing the benefit of experience in sentencing matters, should retain that discretion necessary to achieve all of the purposes of the [Sentencing] Act.'" 380 S.W.3d at 709 (alteration in original) (quoting State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986)).

However, we also noted in Bise that "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence." Bise, 380 S.W.3d at 705–06 n.41 (citing Tenn. Code Ann. § 40-35-210(e)). "[O]ur ruling in Bise specifically requires trial courts to articulate the reasons for the sentence in accordance with the purposes and principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal." Pollard, 432 S.W.3d at 861 (citing Bise, 380 S.W.3d at 698–99). In Pollard, we emphasized the following principle:

> In the context of consecutive sentencing, the presumption of reasonableness applies similarly [to the reasoning in Bise], giving deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing as least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b).

Pollard, 432 S.W.3d at 861; see also Tenn. R. Crim. P. 32(c)(1) (stating that in ordering consecutive sentencing, the trial court "shall specify the reasons for this decision").

Although we repeatedly have stressed the importance of placing findings on the record, we also have recognized that there is no requirement that the trial court's reasoning be "particularly lengthy or detailed." Bise, 380 S.W.3d at 706. In Bise, we quoted with approval the United States Supreme Court's guidance that the trial court simply must "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Id. (quoting Rita v. United States, 551 U.S. 338, 356–57 (2007)). Of course, we also have remarked that, on a practical level, "less comprehensive findings may require appellate courts to more carefully review the record." Bise, 380 S.W.3d at 706. On appeal, the burden of showing that a sentence is improper is on the appealing party. Tenn. Code Ann. § 40-35-401(d) (Sentencing Commission Comments); see also State v. Dickson, 413 S.W.3d 735, 748 (Tenn. 2013).

As we stated above, in the context of consecutive sentencing, the Sentencing Act provides that as a prerequisite to imposing consecutive sentences under section 40-35-115, the trial court must find by a preponderance of the evidence that the defendant qualifies for consecutive sentencing under one of the classifications set forth in section 40-35-115(b).[9] Only upon determining that the defendant meets the criteria for one of the classifications in section 40-35-115(b) does the trial court then choose whether, and to what degree, to impose consecutive sentencing based on the facts and circumstances of the case, bearing in mind the purposes and principles of sentencing. See Tenn. Code Ann. § 40-35-115(b). Our adoption of the abuse of discretion standard has not eliminated the requirements associated with section 40-35-115. See Pollard, 432 S.W.3d at 863 (stating that the adoption of the abuse of discretion standard did not eliminate the requirements necessary to impose consecutive sentencing for the dangerous offender classification under section 40-35-115(b)(4)).

In this appeal, the question presented by the Defendant focuses on the initial determination under section 40-35-115(b)(2)—whether the Defendant was an offender whose record of criminal activity was extensive.

*B. Consecutive Sentencing Under Section 40-35-115(b)(2)*

As a general matter, in determining an appropriate sentence, the Sentencing Act provides that the trial court shall consider:

(1)     The evidence, if any, received at the trial and the sentencing hearing;
(2)     The presentence report;
(3)     The principles of sentencing and arguments as to sentencing alternatives;
(4)     The nature and characteristics of the criminal conduct involved;
(5)     Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6)     Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
(7)     Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and

---

[9] We recently recognized a similar structure in the context of probation revocation hearings. State v. Dagnan, 641 S.W.3d 751 (Tenn. 2022). In Dagnan, we held that the standard of review for probation revocation decisions—both the decision of whether or not to revoke probation and the decision, assuming revocation, of what consequence to impose—is abuse of discretion with a presumption of reasonableness. Id. at 753. However, we noted that as a prerequisite, "the trial court must determine whether the preponderance of the evidence at the revocation hearing establishes that the defendant violated the conditions of his or her release." Id. at 757 n.4.

- 11 -

(8)     The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b).  Additionally, the Sentencing Act identifies various purposes of sentencing at Tennessee Code Annotated section 40-35-102.  See Bise, 380 S.W.3d at 691.  Likewise, the Sentencing Act also identifies various principles of sentencing, sometimes referred to as "considerations," at Tennessee Code Annotated section 40-35-103.  See Bise, 380 S.W.3d at 689 n.7.  These purposes and principles, in the context of consecutive sentencing, reflect that "[a]lthough statutory criteria may support the imposition of consecutive sentences, the overall length of the sentence must be 'justly deserved in relation to the seriousness of the offense[s],' Tenn. Code Ann. § 40-35-102(1), and 'no greater than that deserved' under the circumstances, id. at § 40-35-103(2)."  Sneed, 302 S.W.3d at 828–29.  As for consecutive sentencing under section 40-35-115(b)(2) in particular, we have observed that "[c]onsecutive sentencing based on an offender's extensive record of criminal activity is appropriate to protect society from those who 'resort to criminal activity in furtherance of their anti-societal lifestyle.'"  Dickson, 413 S.W.3d at 749 (quoting Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976)).  In addition, consecutive sentencing under section 40-35-115(b)(2) is appropriate "to protect the public from an individual not likely to be rehabilitated."  State v. Brewer, 875 S.W.2d 298, 303 (Tenn. Crim. App. 1993).

Section 40-35-115(b)(2) authorizes consecutive sentencing for an offender "whose record of criminal activity is extensive."  However, this classification is not self-defining, and the Sentencing Act does not provide a precise meaning.  Most significantly, the Sentencing Act does not define what constitutes an "extensive" record of criminal activity.  Tennessee law requires that the criminal code be "construed according to the fair import of its terms."  Tenn. Code Ann. § 39-11-104 (2018).  We have recognized that, in the absence of statutory definitions, we may look to authoritative dictionaries.  State v. Deberry, 651 S.W.3d 918, 925 (Tenn. 2022); State v. Majors, 318 S.W.3d 850, 859 (Tenn. 2010); accord Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009) (observing that a statutory term left undefined by the statute "carries its ordinary meaning").  In common usage, "extensive" is defined in various ways, all sharing similarities.  For instance, Black's Law Dictionary defines "extensive" as "[w]idely extended in space, time, or scope."  Extensive, Black's Law Dictionary (6th ed. 1990).  Merriam-Webster's definitions include "marked by considerable length," "large in amount," or "considerable in number."  Extensive, Webster's 3d New Int'l Dictionary (1986).  Similarly, the Oxford English Dictionary defines "extensive" in various ways, including "extending over or occupying a large surface or space," "large in amount," or "large in scope."  Extensive, The Oxford English Dictionary (2d ed. 1989).  Needless to say, these definitions provide guidance but not precise directions.  However, we glean from them a common thread from which we conclude that an "extensive" record of criminal activity, for purposes of section 40-35-115(b)(2), is that which is considerable or large in amount, time, space, or scope.

Thus, in making the finding that an offender has an extensive record of criminal activity, courts should look to those facts from which they can determine that the defendant's record of criminal activity is considerable or large in amount, time, space, or scope. Our prior opinions have not examined consecutive sentencing under section 40-35-115(b)(2) in significant detail. See Dickson, 413 S.W.3d at 748–49; Sneed, 302 S.W.3d at 828–29; State v. Banks, 271 S.W.3d 90, 147–48 (Tenn. 2008); State v. Allen, 259 S.W.3d 671, 689–90 (Tenn. 2008); State v. Pettus, 986 S.W.2d 540, 545 (Tenn. 1999). This appeal presents an opportunity for this Court to offer guidance on relevant considerations that ordinarily will inform the determination of whether an offender's record of criminal activity is extensive. To that end, and with the general definitions of "extensive" in mind, courts should look to the following non-exclusive considerations in evaluating whether the proof establishes that the defendant is an offender whose record of criminal activity is extensive:

(1)     The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;[10]

(2)     The time span over which the criminal activity occurred;[11]

(3)     The frequency of criminal activity within that time span;[12]

(4)     The geographic span over which the criminal activity occurred;[13]

---

[10] See, e.g., Dickson, 413 S.W.3d at 748 (finding extensive criminal activity based on "numerous prior convictions" indicating "a consistent pattern of operating outside the confines of lawful behavior"); Sneed, 302 S.W.3d at 829 (finding extensive criminal activity based on fifty contempt convictions presently before the Court).

[11] See, e.g., State v. Kim, No. W2017-00186-CCA-R3-CD, 2018 WL 1679346, at *14 (Tenn. Crim. App. Apr. 6, 2018) (finding extensive criminal activity based on fourteen offenses that took place over a five-month period); State v. McIntosh, No. E2017-01353-CCA-R3-CD, 2018 WL 2259183, at *1, *5 (Tenn. Crim. App. May 17, 2018) (finding extensive criminal activity based on sixteen offenses that took place over a five-month period and a seventeenth offense that occurred three to four years earlier).

[12] See, e.g., State v. Franklin, No. M2018-01958-CCA-R3-CD, 2020 WL 4280692, at *10, *27 (Tenn. Crim. App. July 27, 2020) (finding extensive criminal activity based on repeated instances of prior unlawful behavior recurring regularly across seventeen years); State v. Bailey, No. E2001-02443-CCA-R3-CD, 2002 WL 2012652, at *4 (Tenn. Crim. App. Aug. 28, 2002) (finding extensive criminal activity based on seven separate offenses that occurred over an eleven-month period).

[13] See, e.g., State v. Prince, No. M2012-02488-CCA-R3-CD, 2013 WL 2447859, at *1, *4 (Tenn. Crim. App. June 6, 2013) (finding extensive criminal activity based on a four-county crime spree that involved more than thirty convictions); State v. Bennett, No. M2002-01215-CCA-R3-CD, 2003 WL 1562090, at *3 (Tenn. Crim. App. Mar. 26, 2003) (finding extensive criminal activity based on, in part, a four-county crime spree that involved eighteen convictions).

(5)     Multiplicity of victims of the criminal activity;[14] and

(6)     Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

These considerations very well may intersect in a given case, such that one consideration is best understood in reference to another.[15]  Having set forth the considerations, we will offer more detail in the context of examining them as applied to this case.

### C. The Trial Court's Consecutive Sentencing Determination

The Defendant argues to this Court that some lower courts, "including the trial court and a majority of the Court of Criminal Appeals panel in this case[,] seem to think that once a defendant has a certain number of convictions, no other proof is needed to establish by a preponderance of the evidence that a record of criminal activity is 'extensive' for purposes of section 40-35-115(b)(2)."  Building on this argument, the Defendant contends that his number of convictions is misleading in the sense that he

> pleaded guilty to 24 offenses—not because the proof showed that his actions demonstrated prolonged or sustained criminal activity—but because the statute that governs aggravated sexual exploitation provides that a defendant 'may be charged in a separate count for each individual image, picture, drawing, photograph, motion picture film, videocassette tape, or other pictorial representation,' regardless of whether all materials were acquired or downloaded as part of the same act or transaction.

The Defendant argues that because the "number of convictions was solely a function of the nature in which the aggravated sexual exploitation statute allowed the State to indict," the trial court "should not have relied solely on the number of convictions" to determine that he was an offender whose record of criminal activity was extensive.

The record reflects that, at the conclusion of the sentencing hearing, the trial court addressed the question of consecutive sentencing as follows:

---

[14] See, e.g., State v. Hepburn, No. M2008-01979-CCA-R3-CD, 2010 WL 2889101, at *11 (Tenn. Crim. App. July 23, 2010) (finding extensive criminal activity based on, in part, sixty-two property offenses against twenty-six businesses); State v. Wells, No. W2003-02282-CCA-R3-CD, 2004 WL 1606976, at *2 (Tenn. Crim. App. July 16, 2004) (finding extensive criminal activity based on, in part, forty-eight property offenses against at least twenty-eight victims).

[15] The facts bearing on these considerations likely also will provide at least part of the basis from which the trial court decides, in its discretion, whether to impose consecutive sentencing and, if so, how many terms to run consecutively.

Now, the State has requested that I consider consecutive sentencing and certainly that is something I have to look at. I also consider the presentence report and the [D]efendant's physical and mental condition which, you know, he admits to this serious child pornography problem. I consider the facts and circumstances surrounding the offenses and primarily I'm looking at the number of images that he had downloaded, 174 either photographs or videos involving child pornography which is extensive. It's a large number of documents and items that he possessed. I do give great weight to that.

I do find under T[enn]. C[ode] A[nn]. [§] 40-35-115 that his record of criminal activity is extensive based upon the number of convictions and the number of offenses he's committed and the number of offenses he's pled guilty to. I do find that to be extensive.

I also consider the fact that he not only possessed these, but apparently he shared and traded a lot of these child pornography videos and pictures with other individuals. You know, I do take that into consideration as part of the facts and circumstances of this case.

After deciding to impose partial consecutive sentencing for an effective term of eighteen years of imprisonment, the trial court further commented:

I feel like the 18 year sentence is appropriate given the extensive criminal convictions here today. I also find that the aggregate length of this 18 year sentence reasonably relates to the number of offenses for which the defendant stands convicted. As I said, 174 separate items in each one he could be sentenced for, I mean, each one could carry anywhere from eight to twelve years just for one,[16] but I am going to give him – just run these three counts consecutive to all of the other counts so it will be a total of 18 year sentence that he'll have to serve.

Against this factual backdrop, we examine the trial court's determination that the Defendant was an offender whose record of criminal activity was extensive in light of the considerations we set forth earlier in this opinion.

---

[16] The trial court misspoke with respect to the potential term for each separate item. The relevant offense would be a Class B felony, with a sentencing range of eight to twelve years, only if the number of items were greater than twenty-five. See Tenn. Code Ann. §§ 39-17-1004(a)(4); 40-35-112(a)(2). Indeed, six of the Defendant's convictions were Class B felonies, and the trial court sentenced the Defendant accordingly. However, the sentencing range for an offense related to each individual item, a Class C felony, would be three to six years. See Tenn. Code Ann. §§ 39-17-1004(a)(4); 40-35-112(a)(3).

- 15 -

Tennessee courts uniformly consider the amount of criminal activity, often the number of convictions, in deciding consecutive sentencing under section 40-35-115(b)(2). See, e.g., Dickson, 413 S.W.3d at 748; Sneed, 302 S.W.3d at 829. The fact obviously bears on the question of whether an offender has an extensive record of criminal activity. In this case, the trial court recognized that the Defendant has no prior convictions. Although not a point of contention in this appeal, we clarify that a defendant need not have prior criminal convictions or activity to qualify as an offender whose record of criminal activity is extensive for purposes of section 40-35-115(b)(2). See Sneed, 302 S.W.3d at 829 (citing State v. Cummings, 868 S.W.2d 661, 664, 667 (Tenn. Crim. App. 1992)); State v. Palmer, 10 S.W.3d 638, 648–49 (Tenn. Crim. App. 1999). Of course, prior convictions or criminal activity may demonstrate "a consistent pattern of operating outside the confines of lawful behavior" and provide some stronger measure of justification for finding that a defendant is an offender whose record of criminal activity is extensive. Dickson, 413 S.W.3d at 748. However, we do not believe the Sentencing Act requires criminal activity apart from that for which the defendant is being sentenced to support the relevant finding under section 40-35-115(b)(2).[17]

The State points out in its brief before this Court that the Defendant—twenty-two years old at the time of sentencing—does have a record of prior criminal activity in the form of occasional marijuana usage, from age fifteen through approximately twenty, and occasional underage alcohol consumption, beginning at age seventeen. The trial court referred to this criminal activity in setting the length of the Defendant's individual terms, giving "some substantial weight" to the marijuana usage but "[not] a lot of weight" to the alcohol usage. However, although obviously aware of the criminal activity, the trial court did not refer to this activity when addressing the issue of consecutive sentencing.[18]

As for present criminal activity, the trial court clearly observed that the Defendant pleaded guilty to twenty-four counts of aggravated sexual exploitation of a minor, stating that the Defendant's "record of criminal activity is extensive based upon the number of convictions." The Defendant contends that the number of convictions is misleading—and

---

[17] "Record" certainly can refer to a history of prior convictions. See Record, The Oxford English Dictionary (2d ed. 1989) (defining "record," in part, as an account of a person's conduct in a particular sphere, especially a record or history of criminal convictions or prison sentences). However, we do not believe "record" as used in section 40-35-115(b)(2) is confined to criminal convictions (or criminal activity) other than that for which the defendant is being sentenced. Instead, we believe that "record" refers more generally to the sum of the defendant's actions or conduct in the particular area of criminal activity. See Record, Webster's 3d New Int'l Dictionary (1986) (defining "record," in part, as a body of known, recorded, or available facts about something); see also Palmer, 10 S.W.3d at 648 (identifying an offender's "record" of criminal activity as "his or her history of criminal activity," including both the offenses for which the defendant is being sentenced and any other criminal activity).

[18] Similarly, although the record contains evidence of some limited prior criminal activity, given the nature and circumstances of the activity, we believe it carries very little, if any, weight in establishing that the Defendant has an extensive record of criminal activity.

does not reflect an extensive record of criminal activity—in that it is the result of prosecutorial charging discretion.[19] The Defendant therefore argues that the fact that he stands convicted of twenty-four offenses, by itself, does not establish a sufficient basis from which to find that he has an extensive record of criminal activity and that the trial court erred by relying "solely on the number of convictions" to find that he qualified for consecutive sentencing under section 40-35-115(b)(2).

Based on our review of the record, however, we respectfully disagree with the Defendant's contention that the trial court relied solely on the fact that he stood convicted of twenty-four offenses in determining that he qualified as an offender whose record of criminal activity was extensive. The trial court also considered the number of images and videos, referring to the "large number of documents and items that [the Defendant] possessed" as "extensive." In our view, the trial court properly looked to the amount of child pornography that the Defendant possessed—for that was the nature of the Defendant's criminal activity—in determining whether his record of criminal activity was extensive. Moreover, we agree with the trial court that possession of 174 images or videos of child pornography, regardless of the resulting number of convictions, reflects criminal activity that was considerable in amount or scope.

Furthermore, the trial court also considered the fact that the Defendant not only possessed the 174 images or videos at issue, but also admittedly had shared or traded child pornography with others. In our view, this fact bears on the scope of the Defendant's criminal activity. We agree with the trial court that actually having shared or traded child pornography reflects criminal activity on the part of the Defendant more considerable in scope than simply having possessed child pornography, even with intent to distribute or exchange.

The Defendant makes the point that the trial court failed to consider the time span involved in committing the offenses, suggesting that "the illegal materials were downloaded online, and thus could have been acquired all at one time, in a single transaction." Indeed, the record reflects that the trial court did not refer to the time span of the Defendant's criminal activity when addressing consecutive sentencing, nor did the trial court directly address the frequency of criminal activity within the time span.[20] As we explained above, the time span of criminal activity and frequency of criminal activity within that time span often are relevant considerations in determining whether an offender has an extensive record of criminal activity. In this respect, the trial court's failure to

---

[19] Of course, although the State has charging discretion under the applicable statute, the Defendant voluntarily chose to plead guilty to twenty-four separate counts. We also note that the Defendant did not make this point—that his number of offenses was misleading and did not reflect an extensive record of criminal activity—to the trial court at the sentencing hearing.

[20] The record does reveal that earlier in the sentencing hearing, the trial court stated: "Back in 2016 and 2017 was the time he committed the offenses."

address these considerations reveals a shortcoming in addressing whether the Defendant qualified as an offender whose record of criminal activity was extensive under the circumstances of this case.[21]

Considering the entirety of the record, however, we do not believe the trial court's deficiency in specifically addressing the time span and frequency of criminal activity negates the presumption of reasonableness for the sentencing decision. The record shows that the trial court specifically—and properly—articulated the substantive sources for its sentencing decision and followed appropriate sentencing procedure. Furthermore, the trial court identified on the record multiple facts—all properly related to relevant considerations concerning the amount and scope of the Defendant's criminal activity—from which it found that the Defendant qualified as an offender whose record of criminal activity was extensive. The trial court articulated on the record its reasons for ordering partial consecutive sentencing, thereby providing a basis for meaningful appellate review. See Pollard, 432 S.W.3d at 862. Accordingly, the trial court's findings, although lacking in some respects, were sufficient to merit the presumption of reasonableness. Cf. Bise, 380 S.W.3d at 705–06 (holding that a trial court's misapplication of an enhancement or mitigating factor does not invalidate the presumption of reasonableness). Thus, we must uphold the trial court's sentencing decision absent an abuse of discretion. See Pollard, 432 S.W.3d at 862.

"A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." Harmon v. Hickman Cmty. Healthcare Servs., Inc., 594 S.W.3d 297, 305 (Tenn. 2020) (quoting Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010)). Having carefully reviewed the record, we discern no such error on the part of the trial court in ordering partial consecutive sentencing totaling eighteen years of imprisonment after finding that the Defendant was an offender whose record of criminal activity was extensive. The Defendant pleaded guilty to twenty-four separate offenses. We recognize that the nature of the Defendant's offenses resulted in flexibility as to how many individual offenses he was charged with, and this circumstance is worthy of consideration in evaluating the amount of criminal activity at issue in this case and the appropriate sentence.[22] To that end, however, the record is clear that the Defendant possessed a large amount of child pornography—174 images or videos, involving multiple different minors and multiple sex acts. Moreover, the Defendant not only possessed the 174 images or videos with the intent to distribute or exchange, the Defendant admittedly shared or traded child pornography with others. Lastly, although the trial court did not engage in an analysis

---

[21] We note that neither the State nor the Defendant made mention of the time span or the frequency of criminal activity when arguing before the trial court as to consecutive sentencing.

[22] We reiterate, however, that the Defendant voluntarily chose to plead guilty to twenty-four separate offenses.

of the time span or frequency of the Defendant's criminal activity when deciding the issue of consecutive sentencing, according to the factual basis recounted at the guilty plea hearing, the Defendant's criminal activity "took place during the years 2016 and 2017." Furthermore, the record indicates that the Defendant uploaded files to his Dropbox account on multiple occasions. In other words, the record belies any notion that the Defendant's criminal activity was comprised of a single occasion. Because the parties did not develop this issue at the sentencing hearing, the record leaves some degree of uncertainty as to just how considerable the Defendant's criminal activity was in terms of time span and frequency.[23] Nevertheless, the record in this regard does not militate against the conclusion that other facts demonstrated that the Defendant's criminal activity was considerable in amount and scope. Thus, the record supports the trial court's finding that the Defendant was an offender whose record of criminal activity was extensive. From our review, the Defendant has not demonstrated that the trial court applied an incorrect legal standard, reached an illogical or unreasonable decision, or based its decision on a clearly erroneous assessment of the evidence. Accordingly, we discern no error in the trial court's sentencing decision.

### III. CONCLUSION

For the foregoing reasons, we hold that the trial court did not err in determining that the Defendant qualified under Tennessee Code Annotated section 40-35-115(b)(2) as an offender whose record of criminal activity was extensive and in imposing partial consecutive sentencing for an effective total term of eighteen years of imprisonment. We therefore affirm the judgment of the Court of Criminal Appeals.

Because the Defendant appears to be indigent, the costs of this appeal are taxed to the State.

_____
JEFFREY S. BIVINS, JUSTICE

---

[23] We again note that the Defendant bears the burden of showing on appeal that the sentence imposed by the trial court is improper. See Tenn. Code Ann. § 40-35-401(d) (Sentencing Commission Comments).

- 19 -